UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

BOBBY RICHARDSON.

Criminal Action No. 3:09–CR–15
Civil Action No. 3:13–CV–21

## MEMORANDUM OPINION

THIS MATTER is before the Court on *pro se* Petitioner Bobby Richardson's Motions Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (collectively "§ 2255 Motions") (ECF No. 65 & 67)[1] and Motion of Clarification (ECF No. 73). For the reasons stated below, the Court DENIES Richardson's Motions.

## BACKGROUND

*Factual Background*

The facts surrounding Richardson's original arrest underlie the majority of Richardson's

---

[1] On December 31, 2012, Richardson placed a type-written § 2255 Motion (ECF No. 67) in the prison mailing system. This motion was docketed by the Clerk's Office on January 10, 2013 and included thirteen grounds for relief and seventeen exhibits. On January 2, 2013, Richardson placed a handwritten § 2255 Motion (ECF No. 65) in the prison mailing system. This motion was docketed by the Clerk's Office on January 8, 2013 (dated January 7, 2013) and included four additional grounds for relief and no exhibits. Richardson attempts to clarify the reason for submitting multiple motions in his Motion of Clarification mailed on April 11, 2013. In the Motion of Clarification, Richardson states:

> The Defendant would also like to inform the that [*sic.*] he never forwarded the Court a memorandum on January 8, 2013 and that he would like to have his 28 U.S.C. §2255 Motion treated as it is labeled, not as a memorandum. Most of the grounds in the motion are without case law, however the Defendant accidentally erred by giving another inmate, who was typing the motion up for him, some handwritten pleadings that were meant to be used for a memorandum.

Motion for Clarification, ECF No. 73. Richardson's clarification does not succeed in explaining why he submitted two § 2255 Motions. Because the dates appear to create some confusion as to which motion should be considered successive and despite the fact that Richardson utterly ignores the page limits set forth in Local Civil Rule 7(F), the Court addresses all seventeen grounds for relief raised by Richardson in his § 2255 Motions.

1

claims. A brief description of these facts is therefore provided below.[2] On August 6, 2008, a confidential informant made a controlled buy, on behalf of the Petersburg Bureau of Police, of heroin outside of Richardson's business located at 2020 South Sycamore Street, Petersburg, Virginia ("the business" or "2020 South Sycamore Street"). According to trial testimony, the confidential informant arranged a deal with Richardson by a telephone call monitored by the police. Trial Tr. 67, 82, May 27, 2009. The confidential informant then walked to Richardson's business located at 2020 South Sycamore Street and Richardson exited the business to meet the informant. Trial Tr. 148. Richardson then walked back into the business, stayed inside for two or three minutes, and then entered a light-colored sedan that was parked in front of the business. Trial Tr. 148. The informant also entered the car. Trial Tr. 149. The confidential informant testified that while in the car, Richardson drove around the block and sold him twenty-five packets of heroin in exchange for $500. Trial Tr. 64-65. The confidential informant also testified that he had been inside of 2020 South Sycamore Street on numerous occasions and as recently as three or four days before the controlled buy.[3] Trial Tr. 75. During his most recent visit to 2020 South Sycamore Street, the confidential informant testified he saw "weed, marijuana, crack, [and] heroin." Trial Tr. 68.

After the controlled buy, the Petersburg Police contacted the Petersburg Deputy Commonwealth's Attorney who told them to "lock down the business" while a search warrant was obtained. Trial Tr. 90-91. As the officers approached the front door of the business, Richardson "burst through the door screaming." Trial Tr. 92. The police chased Richardson and eventually subdued him using O.C. (or pepper) spray because he was defiant and combative. Trial Tr. Excerpt 3-6, ECF No. 43.[4] After doing so, the officers found the $500 of pre-marked

---

[2] Many of the facts from the record are undisputed. Factual disputes are noted and generally make up Richardson's claims for relief.
[3] Richardson disputes the timing of the confidential informant's most recent entrance in to 2020 South Sycamore Street. *See infra* Grounds 2 & 3.
[4] A portion of the trial transcript for May 27, 2009 is a separate document entitled "Excerpt from Proceedings" (ECF No. 43). This portion of the transcript is not continuously paginated with the remainder of the trial transcript. All references to this portion of the trial transcript are referred to as

controlled buy money in Richardson's pocket. Trial Tr. Excerpt 16-17.

Tamila Taylor was also present at 2020 South Sycamore Street when the police locked down the business. Trial Tr. 52-53. Taylor arrived at the business in the late morning of August 6, 2008. Trial Tr. 51. After Richardson ran out of the building, the police placed Taylor in custody by handcuffing her and then brought her out of the building and determined she did not have anything to do with the drugs or money found at the business.[5] Trial Tr. 52-53, 93. Taylor testified that between her arrival that morning and when the police arrived, a man named Patrick Jones[6] came to pick up the mail and that she saw someone else outside the business who did not enter the building. Trial Tr. 54-55.

After apprehending Richardson, the police sought and obtained a search warrant for 2020 South Sycamore Street. Trial Tr. 95. A major dispute prior to trial and in this collateral proceeding concerns the time at which the police obtained the search warrant with respect to when they began conducting the search of 2020 South Sycamore Street. *See infra* Grounds 1-3. During the search, the police found a variety of contraband, including heroin, marijuana, counterfeit U.S. currency (both cut and uncut sheets), and a loaded semi-automatic pistol with eight rounds of ammunition. Trial Tr. 20-41.

*Procedural Background*

On December 4, 2008, Richardson was arrested on a criminal complaint in the Eastern District of Virginia for charges relating to the events described above. The grand jury subsequently indicted Richardson on January 7, 2007. The Indictment charged Richardson with one count of Possession with Intent to Distribute Heroin, one count of Distribution of Heroin,

---

"Trial Tr. Excerpt."

[5] The exact location of Taylor's detention is disputed by Richardson. *See infra* Ground 9(j).

[6] Patrick Jones is also known as Antoine Jones. For the sake of consistency, the Court refers to him as Patrick Jones throughout this Opinion. Further, this case involves three individuals with the surname "Jones." Detective Evan Jones is referred to as "Detective Jones," Lieutenant Edward Jones is referred to as "Lieutenant Jones," and Patrick Jones is referred to as "Patrick Jones" or simply "Jones." Detective Evan Jones testified his title was Detective at the time of the Suppression Hearing, Suppression Hrg. Tr. 2, ECF No. 20, and that his title was Investigator at the time of trial. Trial Tr. Excerpt 11. For the sake of consistency, the Court refers to Detective Evan Jones as "Detective" throughout this Opinion.

one count of Possession of a Firearm/Ammunition by a convicted Felon, and six counts of Make and Forge Counterfeit Obligations. Richardson filed a motion to suppress evidence, alleging that the search of his business (which resulted in the seizure of most of the relevant evidence) occurred before the magistrate signed a lawful search warrant. The Court conducted a suppression hearing on May 4, 2009 and determined the search was lawfully conducted after the issuance of the search warrant and denied Richardson's Motion to Suppress.

Richardson proceeded to a jury trial on May 27 and 28, 2009. At the close of trial, the jury convicted Richardson of all counts charged in the Indictment. On October 15, 2009, the Court sentenced Richardson to 288 months imprisonment, total, on all counts. Richardson subsequently filed an appeal. Richardson's attorney submitted the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), averring that there were no meritorious issues for appeal. *United States v. Richardson*, No. 09-5015, ECF No. 62 (4th Cir. Aug. 4, 2011). Richardson filed *pro se* supplemental briefs. *Id.* The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") additionally requested all parties brief whether the district court adequately stated the reasons for imposing the chosen sentence. *Id.* After fully considering the arguments raised by Richardson and the Government and reviewing the entire record, the Fourth Circuit affirmed this Court's ruling on the Motion to Suppress and the conviction and sentencing of Richardson. *Id.*

On December 31, 2012 and January 2, 2013, Richardson timely filed the instant § 2255 Motions[7] asserting seventeen grounds for relief:

Ground 1: Richardson's trial counsel was ineffective in failing to challenge the search warrant that lacked reliability and probable cause.

Ground 2: Richardson's trial counsel was ineffective in failing to challenge the search warrant after trial testimony proved that the confidential informant could not have observed drugs present inside Richardson's business as the affidavit supporting the search warrant alleged.

Ground 3: Richardson's trial counsel was ineffective in failing to challenge the search

---

[7] *See supra* note 1.

warrant after trial testimony proved the confidential informant was not inside Richardson's business within seventy-two hours of conducting the alleged controlled buy as the affidavit supporting the search warrant alleged.

Ground 4:     Richardson's trial counsel was ineffective for failing to:

(a) prove that there was no clerical error in the magistrate's signature and date on the affidavit supporting the search warrant;

(b) challenge the lockdown of Richardson's business and detention of his employee Tamila Taylor;

(c) make a Sixth Amendment objection to the officers' testimony that they were given authorization to lockdown Richardson's business and to impeach the officers;

(d) use trial testimony to prove that the search of Richardson's business was conducted before the search warrant was issued; and

(e) impeach Assistant United States Attorney ("AUSA") Miller's statements at the suppression hearing regarding the timing of Richardson's arrest based on a conflicting emergency medical service report and the testimony of Lieutenant Jones.

Ground 5:     Richardson's trial counsel was ineffective in failing to object to the Government's closing remarks that law enforcement watched the confidential informant throughout the entire controlled buy.

Ground 6:     Richardson's trial counsel was ineffective in failing to object to the Government's closing remarks on other possible suspects.

Ground 7:     Richardson's trial counsel was ineffective in failing to object to the Government's closing remarks implying that Richardson confessed in a telephone conversation.

Ground 8:     Richardson's trial counsel was ineffective in failing to object to the Government's "vouching" for information both parties knew, or should have known, was false.

Ground 9:     Richardson's trial counsel was ineffective in failing to impeach witnesses, challenge the sufficiency of evidence, or make a proper defense based on thirteen instances ((a) through (m)) of inconsistent trial testimony.

Ground 10:   (a) Richardson's trial counsel was ineffective in failing to challenge the admissibility of a controlled phone conversation, and

(b) the government failed to timely disclose evidence of the controlled phone conversation it intended to introduce at trial.

Ground 11:   Richardson's trial counsel was ineffective in failing to provide Richardson with a transcript of a phone conversation introduced at trial and to make a Sixth Amendment objection and raise the argument on appeal.

Ground 12: Richardson's trial counsel was ineffective in failing to challenge the Court pressing for a verdict, specifically:

(a) Judge Spencer insinuated that he had an opinion on the case and that he expected the jury to reach a verdict without consulting him about questions;

(b) The Court coerced the jury into reaching a verdict by informing the jurors about the burden of a retrial; and

(c) The Court coerced the jury into reaching a verdict by informing the jurors that the Court did not want to hear from the jury until they were unanimously decided.

Ground 13: Richardson's trial counsel was ineffective in failing to object to a jury instruction regarding Richardson's knowledge that the controlled substance involved was heroin.

Ground 14: Richardson's trial counsel was ineffective in failing to challenge that the indictment did not charge Richardson with knowledge that his actions affected commerce.

Ground 15: Richardson's trial counsel was ineffective in failing to challenge the Court's factual findings about Richardson's prior convictions.

Ground 16: At sentencing, the Court found facts that increased Richardson's sentence by a preponderance of the evidence.

Ground 17: Richardson's counsel was ineffective in failing to challenge his 288 month sentence as violating of the Eighth Amendment.

The United States responded in opposition and Richardson timely[8] filed numerous pleadings in reply.[9] Accordingly, this matter is ripe for decision.

## DISCUSSION

### I. § 2255 MOTIONS

#### a. Legal Standard

---

[8] Richardson filed a Motion to Clarify the Mailing of Defendant's Reply Brief (ECF No. 77) to clarify he mailed his reply brief to the Court on April 11, 2013. Richardson indicates that he mailed the reply brief to the wrong court address and received it back. Therefore, even though the Court may not have received the reply briefs within the forty days allotted by the Court for Richardson's reply, Richardson asks the Court to accept the briefs as timely. Under the so-called Prison Mailbox Rule, an inmate's document is deemed filed as of the date it is deposited in the prison mailing system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). The Court therefore deems Richardson's reply briefs timely filed on April 11, 2013.

[9] Specifically, Richardson filed a Notice to Strike the Government Entitled Memorandum (ECF No. 72), a Motion of Clarification (ECF No. 73), an Addendum (ECF No. 74), a Response Towards the Government's Reply (ECF No. 75), a Memorandum in Support of Defendant's Response (ECF No. 76), a Motion to Clarify the Mailing of the Defendant's Reply Brief (ECF No. 77), and a Supplement Motion in Support of Reply (ECF No. 78). Out of caution and for the sake of completeness, the Court has reviewed and considered all of Richardson's filings.

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). Therefore, the Court generously interprets Richardson's factual allegations and legal contentions.

Ineffective assistance of counsel claims under the Sixth Amendment are examined under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance claim, a petitioner must show: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Id.* There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A court must consider "the practical limitations and tactical decisions that counsel faced" when making an ineffective assistance of counsel determination. *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).

To satisfy the deficient performance prong of the *Strickland* test, the petitioner "'must show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). To satisfy the prejudice requirement, the petitioner must show that counsel's errors were serious enough to deprive the petitioner of a fair trial.

*Strickland*, 466 U.S. at 687. In other words, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has not satisfied one prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

### b. Grounds 1, 2, and 3

Grounds 1, 2, and 3 fail because Richardson cannot show that his attorney's performance was deficient. Richardson's first three grounds allege three statements in the affidavit supporting the search warrant of 2020 South Sycamore Street on August 6, 2008 were false and were contradicted by trial testimony. This trial testimony, however, does not show the statements in the affidavit are false.

Ground 1 alleges the following statement from paragraph 7 of the affidavit is false: "The confidential informant is reliable in a way that he/she has provided information in the past that has been deemed credible by an independent third party." § 2255 Motion, Ex. B, ECF No. 67.[10] Richardson alleges this is false because the cross examination of the confidential informant provided the following testimony:

> Q. Had you had any contact with the police before that time [the time of the controlled buy]?
> A. No, sir.
> Q. Had you ever cooperated before?
> A. I don't understand.
> Q. Before this cooperation incident there in August, had you cooperated with the police prior to that?
> A. No, sir.

Trial Tr. 75. This testimony does not indicate the statement in the affidavit is false for two reasons. First, the confidential informant could not have meant that he never before had contact with the police before the time of the controlled buy. His earlier testimony indicated he had been convicted of a felony for distribution of cocaine and has also been arrested on breaking and

---

[10] Each citation to one of the § 2255 Motions includes an ECF number to indicate which motion includes the information cited.

entering, trespass, and threat charges. Trial Tr. 57, 73. Second, the affidavit does not indicate which independent third party deemed the confidential informant's prior information credible. Potentially, the confidential informant provided information to a prosecutor who vouched for his credibility. The trial testimony is therefore not in direct conflict with the statement in the affidavit and it was not unreasonable for Richardson's attorney to choose not to seek suppression based on any minor inconsistency between these statements.

Ground 2 asserts the falsity of a statement in paragraph 4 of the affidavit: "In the last 72 hours a reliable informant made a controlled buy of heroin[] . . . from the location stated in section 2 of this document [2020 South Sycamore Street]." § 2255 Motion, Ex. B, ECF No. 67. Richardson asserts this statement means the controlled buy took place inside 2020 South Sycamore Street. During the suppression hearing, the Government and the Court stated the controlled buy took place inside the business.[11] Suppression Hrg. Tr. 17, May 4, 2009, ECF No. 55.[12] At trial, however, the testifying officers, the confidential informant, and Taylor all stated that the confidential informant did not enter the building during the controlled buy. Here again the trial testimony does not show the statement in the affidavit is false. The statement in the affidavit merely indicates the controlled buy took place "from" 2020 South Sycamore Street. This is confirmed by trial testimony that described the controlled buy occurring after the confidential informant walked up to 2020 South Sycamore Street and Richardson exited the building. Trial Tr. 148. Thus, the statement in the affidavit is not false in that it correctly asserts the controlled buy took place *from* the business, not *in* the business.

Ground 3 asserts paragraph 4 of the affidavit indicates the confidential informant entered 2020 South Sycamore Street within seventy-two hours of the controlled buy and that

---

[11] These statements are immaterial because the issue at the suppression hearing was the time of the issuance of the search warrant with respect to the timing of the actual search. The parties did not argue whether the controlled buy took place "in" or "from" the building. The Court's statements regarding the location of the controlled buy were therefore superfluous, do not control the Court's current interpretation of the affidavit, and do not have any effect on the meaning of the statement contained in the affidavit.

[12] The transcript of the suppression hearing consists of two, non-consecutively paginated documents. To differentiate between the two documents, the ECF number is provided in each citation to the suppression hearing transcript.

trial testimony contradicts that statement. Paragraph 4 state, in its entirety:

> In the last 72 hours a reliable informant made a controlled buy of heroin[] . . . from the location stated in section 2 [2020 South Sycamore Street]. The informant also observed a large quantify of heroin[] and cocaine packaged for sale and/or distribution.

§ 2255 Motion, Ex. B, ECF No. 67. Richardson contends this is contradicted by trial testimony where the confidential informant indicated the most recent time he visited the business was "about four days before the time [of the controlled buy], three to four days." Trial Tr. 75. This testimony does not prove the statement in the affidavit false. The confidential informant said it was either three or four days before the controlled buy that he had gone into 2020 South Sycamore Street; he therefore could have been there within the last seventy-two hour timeframe leading up to the request for the search warrant. More importantly, however, the affidavit does not indicate when the confidential informant entered the business and observed heroin and cocaine. The seventy-two hours in the affidavit refers to the timing of the controlled buy. The next sentence of paragraph 4, discussing the drugs observed at the business, does not describe the timeframe in which the confidential informant made his observation.

None of the three statements underlying Grounds 1 through 3 are shown to be false by trial testimony. Richardson's trial counsel therefore did not perform deficiently in choosing not challenge the search warrant based on the statements in the underlying affidavit that might appear vaguely contradictory to trial testimony. Furthermore, trial counsel did challenge the search warrant on the more obvious and more meritorious ground that the magistrate judge's signature on the affidavit indicated a time and date later than the search was executed. "Lawyers who represent criminal defendants are accorded considerable latitude with respect to proper strategy." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011). Richardson's attorney made a strategic decision to challenge the search warrant based on the timing of the magistrate's signature with relation to the timing of the search. Such a decision is certainly a sound strategic choice and cannot be deemed deficient performance under *Strickland*. Grounds 1, 2, and 3 are

therefore DENIED.

### c. Grounds 4(a) and (d)

Grounds 4(a) and (d), which allege Richardson's attorney should have raised additional suppression issues, fail because Richardson cannot show his attorney performed deficiently. On May 4, 2009, the Court held a suppression hearing to determine whether the search of Richardson's business took place before the issuance of the search warrant. The Court heard testimony from the issuing magistrate and the officers involved in obtaining the search warrant and conducting the search. The Court found that though the magistrate signed and dated the affidavit in support of the search warrant as August 6, 2008 at "2:35 p," the search warrant was actually issued at 1:30 p.m., the time the computer time-stamp stated on the issued search warrant. Suppression Hrg. Tr. 18, ECF No. 55. The 2:35 time written by the magistrate was determined by the Court to be merely a clerical error. *Id.* The Court therefore denied the motion to suppress, finding the search took place after the issuance of the search warrant. *Id.* at 18-19.

Richardson asserts that his counsel was ineffective in failing to subsequently challenge the search on two grounds: first, Richardson argues his attorney should have once again argued the timing of the magistrate's signature on the affidavit was not a clerical error and that the search warrant was actually issued at 2:35 p.m. because, according to Richardson, three copies of the affidavit reveal the magistrate signed them individually. Richardson contends this shows the magistrate's awareness of the time at which she signed the affidavit. Richardson's attorney was not deficient in choosing not to raise the issue after the pre-trial suppression hearing because the Court already fully considered the issue. At the suppression hearing, the Court considered each of the three copies of the affidavit and Richardson's attorney asked the magistrate about the time on cross examination. The exchange between the defense attorney and the magistrate proceeded as follows:

> Q. When you look at those three signatures that are at the bottom of those affidavits, that appears to be your signature, correct?
> A. A copy of it, yes.

> Q. In your opinion, those are three copies of the same affidavit?
> A. Certainly appears to be that way to me.
> Q. There is no way that they could be three separate affidavits?
> A. No.

*Id.* 9-10. Based on this examination, the Court found "the Magistrate Judge testified and the Court accepts, it is clear and obvious that the affidavit was dealt with prior to the search warrant issuing, so it would have been prior to 1:30 p.m. and the 2:30 time was simply an error on the part of the Magistrate." *Id.* at 18. The Court considered all three copies of the affidavit and nevertheless found that the magistrate judge made a clerical error in writing the time on the affidavit. Counsel therefore raised the issue of the three affidavits at the suppression hearing in an attempt to prove the search warrant was not executed until 2:35, exactly what Richardson now submits he should have done. Counsel was therefore not deficient in his performance with regard to the three affidavits.

Next, Richardson alleges counsel was ineffective in failing to challenge the search on the basis that it began at 1:30 p.m., which Richardson states was before the earliest time the search warrant could have been issued at 1:35. At the suppression hearing, Detective Sharp testified "[a]pproximately the search began at 13:30 hours" and that the evidence was marked as collected at 13:30 hours. Suppression Hrg. Tr. 20-21, ECF No. 20. The Court then found the search did not commence prior to the execution of the search warrant. At trial, Detective Jones testified regarding the time written on each bag collected from the search. Detective Jones testified he began to execute the search warrant at 13:35 hours and the search took a couple of hours. Trial Tr. 45. Detective Jones conceded that each evidence bag stated it was collected at 13:30 because it was "[j]ust an average time. I always do an average time when I do search warrants. If we do 13:35 hours, 14:00, that's the time I can remember quickly to write down everything so I don't forget what time when I am doing a report later on." *Id.*

Based on Detective Jones's trial testimony, Richardson asserts his counsel should have argued the search must have started before the search warrant was issued because if he actually

began the search at 13:35, he would have rounded up to 14:00, not down to 13:30. Richardson's claim fails because Detective Jones's testimony does not state that if the search took place at 13:35, he would round the time up to 14:00. He merely uses 14:00 as an example of the rounding he might do. Just before providing this example, Detective Jones stated that the search began at 13:35 hours and he wrote down 13:30 on each evidence bag as "an average time." *Id.* Detective Jones and Detective Sharp both testified that Detective Sharp called the officers at Richardson's business to tell them the search warrant had been issued at 13:35 and then the officers began the search. Suppression Hrg. Tr. 5, 16-17 ECF No. 20. Detective Jones's trial testimony therefore did not create a ground for challenging the search warrant. Richardson's lawyer's performance was also not deficient because he considered raising Detective Jones's testimony after trial. Richardson's lawyer asked for the sentencing to be continued so he could review the trial transcript and the Court granted the continuance. *See* Order, Sept. 11, 2009, ECF. No. 40. Prior to sentencing, counsel had access to the transcript of the Detective Jones's suppression hearing and trial testimony. Counsel then chose not to raise the suppression issue at sentencing. Richardson cannot overcome the presumption that counsel made a sound strategic decision not to raise the meritless issue. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Grounds 4(a) and (d) are therefore DENIED.

### d. Grounds 4(b) and (c)

Grounds 4(b) and (c) fail because Richardson cannot show prejudice. Under Ground 4(b), Richardson contends that his counsel should have challenged the lockdown of his business and the detention of his secretary Tamila Taylor before the issuance of the search warrant as a violation of the Fourth Amendment. Ground 4(c) argues that counsel should have challenged the police officers' statements that they had permission to lock down his business as hearsay statements. Such arguments would not, however, change the outcome of Richardson's trial because of the exigent circumstances exception to the warrant requirement, which exist when

police officers "reasonably believe that evidence may be destroyed or removed before they could obtain a warrant." *Unites States v. Cephas*, 254 F.3d 488, 464-95 (4th Cir. 2001). In this case, the police officers locked the business down based on exigent circumstances. Detective Sharp testified,

> We did not want the drugs to walk away because they were readily packaged for sale. We didn't want the buy money to get away, and we didn't want the person who sold, who we knew as Bobby Ice, to walk. We needed to secure the business and we needed to secure the person and secure the money.

Trial Tr. 91.

Richardson's argument that there were no exigent circumstances because he did not know the police were around his business fails. The police had just observed Richardson make a controlled buy, obtaining $500 of funds the police had recorded as buy money. The controlled buy money was evidence that could have easily been removed from the business while the officers waited for a warrant even if Richardson did not know the officers were outside his business. Because the officers' actions were based on exigent circumstances, there was no Fourth Amendment violation and any arguments regarding the trial testimony surrounding the lockdown would not change the outcome of the trial. Additionally, though Richardson states Taylor gave "involuntary statements" after being detained by the officers, he does not point to any such involuntary statements and he was arrested before Taylor even spoke with the police. Trial Tr. 52, 92-93. Richardson was therefore not prejudiced by counsel's decision not to challenge the lockdown of 2020 South Sycamore Street prior to the execution of a search warrant and Grounds 4(b) and (c) are DENIED.

### e. Ground 4(e)

Ground 4(e) fails because counsel was not deficient during the argument portion of the suppression hearing in choosing not to challenge the time AUSA Miller stated the arrest of Richardson occurred. Richardson alleges counsel should have objected to AUSA Miller's argument at the suppression hearing stating "why would [the officers] sit in front of a location

from 1[2]:20 until 1:30 p.m., begin a search at 1:30, and then at 1:35 have a search warrant in hand? It doesn't make sense." Suppression Hrg. Tr. 16, ECF No. 55. This statement indicated the officers arrived at Richardson's business at 12:20 p.m. and waited over an hour until they searched the business. The implication being that they would not have waited over an hour to conduct the search and then actual begin the search before the issuance of the search warrant. Richardson argues his attorney should have objected to this statement because the time on an Incident Report from the Petersburg Fire, Rescue, and EMS states that they were not called to aid Richardson after he was sprayed with O.C. spray until 1:05 p.m. § 2255 Motion, Ex. 10, ECF No. 67. Richardson argues the Incident Report shows that the police did not actually arrive at 2020 South Sycamore Street and arrest him until around 1:00 p.m. rather than 12:20 p.m.

Richardson's argument fails because the testimony at the suppression hearing demonstrated that the police locked the business down between 12:15 and 12:20. Detective Sharp testified that after the business was locked down, he left the scene to obtain a search warrant at "approximately 12:20 p.m." Suppression Hrg. Tr. 13, ECF No. 20. Detective Jones testified the officers "went to lock down the place of business at 12:15 hours." *Id.* at 3. This testimony indicates that the officers did in fact wait for a search warrant to be issued after they finished locking the business down around 12:20 p.m. The Incident Report does not indicate otherwise and no testimony indicates the officers called emergency medical services immediately after the arrest of Richardson. Further, counsel raised the issue of the time listed on the Incident Report when he cross examined Detective Jones. *Id.* at 10-11. The Court therefore had this information to consider when assessing the AUSA's argument and determining whether the search occurred prior to the issuance of the search warrant. Because counsel raised the information Richardson contends he failed to raise and the information does not necessarily show the AUSA's statement was incorrect, Ground 4(e) is DENIED.

### f. Grounds 5, 6, and 7

Grounds 5, 6, and 7 fail because, regardless of whether his counsel could have objected,

the Government's remarks during closing arguments did not prejudice his trial. Grounds 5 through 7 allege that Richardson's trial counsel was ineffective in failing to object to three different statements made by the Government during the closing argument at trial. Consideration of "whether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *United States v. Harrison*, 716 F.2d 1050, 1051 (4th Cir. 1983). To show prosecutorial misconduct based on statements made during closing arguments, a petitioner "must show that the remarks were improper and that they 'prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Adams*, 70 F.3d 776, 780 (4th Cir. 1995) (quoting *United States v. Mitchell*, 1 F.3d 235, 240 (4th Cir. 1993)). Relevant factors to this consideration include:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

*United States v. Scheetz*, 293 F.3d 175, 185-86 (4th Cir. 2002) (citing *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998)).

Ground 5 challenges statements by the Government that the officers had visual contact with the confidential informant throughout the controlled buy transaction. This statement was not improper or prejudicial based on trial testimony. At trial, testimony established that four officers met with the confidential informant, watched him walk down the street to Richardson's business, observed him enter a light-colored sedan with Richardson, and then followed as the car drove around several blocks while the transaction took place. Trial Tr. 87-88, 149-50. Detective Sharp specifically testified that "law enforcement [had] visual eyes on the confidential informant at all times during" the controlled buy. Trial Tr. 88. Though the officers were not in the sedan, they observed the sedan with Richardson and the confidential informant inside and

there was no misconduct on the part of the Government in stating at closing that the officers had visual contact on the confidential informant at all times during the controlled buy based on the trial testimony.

Ground 6 challenges the Government's statement regarding other potential suspects. On rebuttal, the Government stated:

> Do you think Tamila Taylor was making heroin, cutting it up and distributing it? That's just unbelievable. And that's not even something you should consider. Was it the person who picked up the mail? There is no evidence in front of you that the person who picked up the mail was inside the place. No evidence whatsoever. You can't consider something that's not in evidence when you deliberate in this case.

Trial Tr. 240-41. Richardson asserts these statements were misconduct because they undercut the defense theory that Taylor or a man who came to pick up the mail the morning of the controlled buy, Patrick Jones, could have been other potential suspects. Richardson's argument fails; the purpose of rebuttal is to undermine the defense theories. The Government's statements regarding Taylor were proper because trial testimony demonstrated that Taylor arrived the morning of the controlled buy to do some secretarial work and to clean out old materials from the past owners of the building. Trial Tr. 50. No evidence at trial indicated Taylor was involved in the heroin or counterfeiting activities taking place at 2020 South Sycamore Street. The same goes for Jones. Though Taylor testified he came into the building, Trial Tr. 55, the prior tenant of 2020 South Sycamore Street who subleased the building to Richardson testified that Jones picked up the mail for her and that to her knowledge he never went inside and did not have a key to the building. Trial Tr. 161-62. Regardless of whether Jones actually went inside the building, the Government's statements to the contrary do not prejudice Richardson because there was no evidence Jones committed the crime, the officers observed the controlled buy and did not see anyone besides Richardson with the confidential informant, and the officers found the controlled buy money on Richardson after his arrest. This evidence overwhelmingly proves Richardson, not Jones, conducted the controlled buy. Therefore, even if Richardson's counsel was deficient in not challenging the Government's statement that the man who picked up the

mail never entered the building, he was not prejudiced by counsel's failure to do so.

Ground 7 argues Richardson's attorney was ineffective in failing to challenge the Government's statements at closing that indicated Richardson confessed to conducting the controlled buy during a recorded telephone conversation. After the police brought Richardson to the station, he made a phone call while in an interview room. Trial Tr. 98. The call was recorded. Trial Tr. 98. During the call, Richardson stated a man called "Franklin came to see [him]. And he bought $500." Trial Tr. 242-43. During closing the Government stated that this conversation amounted to Richardson telling the person he spoke with that he sold the confidential informant $500 of heroin. This statement was not improper because the confidential informant testified at trial that his nickname is Franklin. Trial Tr. 56-57. Though Richardson did not explicitly state he sold drugs to the confidential informant, the Government is entitled to make the inference that Richardson's statement that Franklin bought $500 was the controlled buy made by a person with the nickname Franklin for $500. *United States v. Francisco*, 35 F.3d 116, 120 (4th Cir. 1994) ("It is undisputed that closing argument is not merely a time for recitation of uncontroverted facts, but rather the prosecution may make fair inferences from the evidence."). The inference the Government drew was clearly supported by trial testimony, and therefore the statement was not improper. Richardson was therefore not prejudiced by the Government's statements during closing arguments and Grounds 5, 6, and 7 are DENIED.

### g. Ground 8

Ground 8 fails because Richardson's claims of error are not supported by the record and therefore his attorney was not deficient in choosing not to raise them. Richardson's alleges trial counsel was ineffective in failing to object to the Government's "vouching" for information that Richardson asserts both parties knew was false. Richardson indicates two instances where his counsel should have objected: (1) at the suppression hearing the Government stated the controlled buy took place inside 2020 South Sycamore Street and counsel should then have objected at trial when the Government allowed witnesses to testify that it took place outside the

building, and (2) at trial the Government mischaracterized evidence about the confidential informant by stating during closing that he had no charges pending when he testified, even though he at least had a misdemeanor pending. No objection was necessary or appropriate with regard to the location of the controlled buy because, as discussed above under Ground 2, the issue of the location of the controlled buy was not central to the suppression hearing and the affidavit in support of the search warrant does not in fact indicate the controlled buy took place inside 2020 South Sycamore Street.

Nor was an objection necessary or appropriate with regard to the confidential informant's criminal history. At trial, the confidential informant testified that when he approached the police with information about Richardson, he had three charges pending—breaking and entering, trespassing, and a threat. Trial Tr. 73. The confidential informant testified that he was ultimately convicted of trespassing and sentenced to twelve months suspended. During the rebuttal closing argument, AUSA Miller stated "He wasn't facing 20 years when he came in here and testified yesterday. He had no charges pending. It was over and done." Trial Tr. 241. According to the confidential informant's trial testimony, this statement was correct and supported by the record. Accordingly, trial counsel had no grounds for objecting to the statement and surely was not deficient in choosing not to make an objection. Ground 8 is therefore DENIED.

### h.  Grounds 9(a)-(m)

Ground 9 fails because Richardson cannot show he was prejudiced by his attorney's choice not to impeach the witnesses on their seemingly inconsistent testimony. Richardson contends there were thirteen instances where witnesses gave inconsistent testimony at trial[13]

---

[13] Specifically, Richardson alleges the following instances of inconsistent testimony:
   a.  Lieutenant Jones testified the arrest of Richardson took place at 1:04 p.m and Detective Sharp testified Richardson was already apprehended and the building was secure at 12:20 p.m.
   b.  Detective Jones testified he found $1,000 in Richardson's pocket, then he testified it was $1,040. Detective Sharp testified $1,540 was seized from Richardson's pocket.

and his attorney was ineffective in failing to impeach those witnesses with other testimony. Richardson asserts there was inconsistent trial testimony with regard to many minor details adduced during trial, including the time police secured Richardson's business, how much money was in Richardson's pocket upon arrest, the time when officers reviewed the buy money, who searched Richardson's business, the time the items were collected during the search, whether Patrick Jones had access to the business, whether the confidential informant previously cooperated and what charges were pending, who detained Taylor and how, officers' locations during the search, what Richardson spoke about during his recorded telephone conversation, and whether the confidential informant entered the business or could be seen during the

---

c. Detective Jones testified he compared the buy money to the photocopy of the buy money and it stayed in his custody until he placed it in the evidence room. Detective Sharp testified that he had the money and compared it during the evening of the arrest at the office.

d. Detective Sharp testified that he participated in searching Richardson's business but Detective Jones testified he was the only one who conducted the search.

e. Detective Sharp testified he conducted the search of the confidential informant, while Detective Buffkin testified he was Detective Jones conduct the search.

f. Detective Jones testified he logged the time as 13:30 on all of the items seized at Richardson's business, but Detective Sharp testified there was electrical equipment seized from the search that was logged into evidence by Detective Jones at 20:00 and other items logged at 13:30.

g. Taylor testified Patrick Jones had access to the business and physically entered the building when he came to pick up the mail on the day of the controlled buy, but the prior tenant testified Patrick Jones never had access to the building and AUSA Miller informed the jury there was no evidence Patrick Jones was ever inside the business.

h. Detective Sharp's affidavit supporting the search warrant states the confidential informant cooperated before August 6, 2008, but the confidential informant testified he never cooperated prior to August 6, 2008.

i. Detective Sharp testified the charges pending against the confidential informant were disposed of in September of 2006, but the confidential informant testified he was in jail on other charges from 1999-2007.

j. Detective Sharp testified at the suppression hearing that Taylor was allowed to remain in the business, but at trial Detective Sharp testified Taylor was brought outside and handcuffed and Detective Buffkin testified that he saw Taylor outside the building before Richardson ran out of the building and that Taylor was not detained until after Richardson's arrest.

k. Detective Sharp testified that Detective Buffkin was in the rear of the building when they locked it down, but Detective Buffkin testified that he pulled up and always remained in front of the building.

l. AUSA Miller stated the transcript of a telephone call indicated Richardson admitted to selling drugs to the confidential informant, but the transcript referred to "Franklin" and did not mention drugs and Patrick Jones testified to the grand jury or in a Government interview that Richardson was not referring to the confidential informant.

m. Testimonies of numerous witnesses and statements made by the Government and the Court conflict with regard to whether the confidential informant entered 2020 South Sycamore Street and whether the officers had visual contact with the confidential informant throughout the controlled buy.

controlled buy. Richardson raises many of these same issues in other grounds for relief and, as discussed above, the testimony is often not explicitly contradictory. *See, e.g.*, Grounds 1, 2, 5, 6, and 7.

Regardless of the degree of conflict between the complained of testimony, Richardson cannot demonstrate he was prejudiced by his attorney's decision not to challenge each detail surrounding the events on August 6th—the evidence against Richardson at trial was simply too overwhelming. The evidence against Richardson includes that a confidential informant purchased heroin from him and the pre-recorded buy money was found in his pocket; Richardson fled screaming from his business as officers approached; Richardson was alone in the building except for Taylor who had no felony record and was clearly not involved in the illegal activities taking place inside; Richardson subleased the business alone; inside the business, police recovered heroin, marijuana, drug paraphernalia, a loaded firearm, over $90,000 in counterfeit money, and numerous counterfeiting tools; and finally Richardson's Staples Reward card was used to purchase several printer cartridges and a laser cutter. Trial Tr. 20-41, 192-95. This evidence constituted overwhelming proof that Richardson committed the crimes charged in the indictment and any minor discrepancies in the trial testimony do not cast doubt on the jury's verdict. Ground 9 is therefore DENIED.

### i. Ground 10

Ground 10 fails because Richardson cannot show prejudice as a result of his attorney's decision not to challenge the admissibility of testimony regarding a controlled telephone call placed by the confidential informant to set up the controlled buy from Richardson. Richardson asserts the admission of this testimony prejudiced him because the Government framed him and testimony regarding the alleged telephone call is a lie. Disregarding the fact that the telephone records submitted by Richardson do not prove the confidential informant did not call Richardson to set up the controlled buy, Richardson cannot prove prejudice based on the testimony regarding the telephone call. The testimony relating to the telephone call was not

necessary, or even substantially probative, to proving the distribution charge against Richardson. The testimony was provided merely to show how the confidential informant came to complete the controlled buy, not as evidence Richardson participated in the controlled buy. In fact, during closing, the Government did not even mention the telephone call.[14] Rather the evidence proving Richardson distributed heroin consisted of the testimony of the confidential informant who purchased heroin from Richardson and the observations of the officers who witnessed the controlled buy and the fact the controlled buy money was found on Richardson after his arrest. Accordingly, the evidence overwhelmingly supports Richardson's conviction of distribution regardless of the admission of testimony regarding a telephone call setting up the controlled buy.

Further, any argument that the Government failed to disclose information regarding the controlled telephone call fails because the Government was under no obligation to disclose that the confidential informant and Detective Sharp would testify regarding the telephone call. Evidence of the telephone call only serves to inculpate Richardson, and therefore is not required disclosure under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Ground 10 is therefore DENIED.

### j.   Ground 11

Ground 11 fails because Richardson cannot demonstrate he was prejudiced as a result of his attorney not providing him with transcripts he requested. Richardson asserts his attorney was ineffective in failing to provide him with a transcript of the DVD introduced at trial, which depicted one side of a phone call made by Richardson and was admitted at trial, and a transcript of a Government interview with Patrick Jones. Each transcript relates to a telephone call Richardson made to Patrick Jones from the investigation room at the police station. Richardson's side of the conversation was recorded and the Government asserted at trial that during the call, Richardson admitted to selling drugs to the confidential informant during the

---

[14] The Government recounted Detective Sharp's testimony regarding setting up the controlled buy: "And he told you that he set up, he directed a controlled buy on that day. He gathered $500 in marked police funds, which you could see in Exhibit 11." Trial Tr. 213.

controlled buy. Richardson asserts that without the transcript of the DVD, he cannot tell if the transcript referenced the confidential informant by name or drugs, which he says his actual conversation did not. Further, Richardson asserts he needed a copy of the Patrick Jones interview transcript because during the interview Jones indicated the telephone conversation was not about the confidential informant.

Richardson was not prejudiced by not obtaining a copy of the transcript of the DVD because the Court instructed the jury that the DVD controlled. The Court instructed as follows: "Let me give the jury this instruction. Understand that these transcripts that you are receiving is [*sic.*] simply someone's interpretation. They listen to it and they make a transcript. The actual evidence is the DVD. You listen to that, and if there's any differentiation between what's in the transcript and what's on the DVD, the DVD controls." Trial Tr. 99-10. The Court presumes "jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 2000, 206 (1987) (citing *Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985)); *Brown v. Clarke*, No. 2:12cv117, 2012 WL 6691551, at *8 (E.D. Va. Nov. 16, 2012). Therefore, even if the transcript stated the confidential informant's name or the word drugs, the jury considered only the words they heard on the DVD. Further, the Government quoted from the transcript but never suggested the transcript included the confidential informant's real name or the word drugs.[15] Instead, the Government made the reasonable inferences that when Richardson said "Franklin" he was referring to the confidential

---

[15] The entirety of the Government's argument regarding the phone conversation follows:

> Bobby Richardson told you that he sold drugs to the CI. And what I want you to do is I want you to consider what you heard on the video. So let's take the CI out of the equation. Let's do exactly what [Richardson's attorney] Mr. Lewis suggests. What you hear on there and when you go back you can listen to it if you want. But on Page 4 of the transcript is where I'm talking about, he says, he calls this guy, PA [Patrick Jones], on the telephone and he says, "You know about what's happening?" And he says, PA says to him, "Cause of What?" And he says, "Cause of Franklin. I swear to God on my mother's life, PA. You know I ain't going to lie about no shit like this, man. Franklin came to see me. And he bought $500. Franklin came to see me and he bought $500. Next thing you know, I see him, as I drop him at the Laundromat, parking things up, when they came for the situation like that, Franklin, man, that's why he wasn't at his dad's funeral. You see what I'm saying?" He swears on his mother's life that Franklin came and bought $500 worth of drugs.

Trial Tr. 242-43.

informant who went by the nickname Franklin, Trial Tr. 56-57, and that when Richardson said Franklin "bought $500," that he was referring to the heroin Richardson sold the confidential informant for $500. *See Francisco*, 35 F.3d at 120.

Richardson was also not prejudiced by not receiving a copy of the transcript of an interview the Government had with Patrick Jones, which Richardson requested after trial. *See* § 2255 Motion, Ex. B5, ECF No. 67. Richardson concedes that he reviewed a copy of the transcript as part of the *Jenks* discovery material prior to trial. § 2255 Motion 48-49, ECF No. 67. Richardson therefore knew, prior to trial, that Patrick Jones stated the telephone conversation was not in reference to the confidential informant or drugs and his conviction is not called into question by his not receiving a copy after trial. Ground 11 is therefore DENIED.

### k. Ground 12

Ground 12 fails because Richardson cannot show his attorney performed deficiently or that he was prejudiced by counsel's decision not to object to the Court's instructions to the jury. Richardson argues that his attorney should have objected to the Court's jury instructions on three grounds: (1) the judge injected his personal opinion that he expected a verdict without any questions and that this *Allen*-like charge was improper at the outset; (2) the instructions coerced the jury to reach a verdict by describing to the jurors the burden of a mistrial; and (3) the instructions coerced the jury into reaching a verdict by telling the jurors the Court did not want to hear from the jury until they were unanimously decided.[16] Jury instructions can go "beyond the permissible limits to which a court may go in its endeavor to influence the jury toward the

---

[16] The challenged instructions in their entirety stated:

> Now, it has been a relatively brief case, and I wouldn't expect this, but if there is a question of some sort or some reason for us to come out here short of your conclusion of a verdict, then let me give you this caveat: Please, we don't ever want to know how you stand. It would be very bad if the Foreperson came out and said, "Well, Judge, we are eight to four." That would be bad because it would result in a mistrial, which would mean that you all would go home but I would have to do this again. Very bad thing. All right, so don't do that.

Trial Tr. 268.

rendition of a verdict." *United States v. Mitchell*, 720 F.2d 370, 372 (4th Cir. 1983). A jury instruction "in which the district judge overemphasizes the importance of unanimity" causes a concern. *United States v. Tillery*, 702 F.3d 170, 176 (4th Cir. 2012). When reviewing jury instructions, however, the court does not "view a single instruction in isolation," *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010), rather the court must review the instruction in its full context. *Tillery*, 702 F.3d at 176.

Reviewing the jury instructions in context, it is clear that there were no error in the instructions and that counsel was not deficient in choosing not to object to the instructions. The Court in no way injected the judge's opinion on a proper verdict. After describing the process for the jurors to ask the Court a question during deliberations, the judge said "Now, it has been a relatively brief case, and I wouldn't expect this, but if there is a question of some sort or some reason for us to come out here short of your conclusion of a verdict. . ." Trial Tr. 267-68. At most, this statement implied that the Court found the law and evidence relatively straightforward and did not anticipate the jurors would have any questions. In no way does this statement indicate that the judge believed the jury should find one way or the other. Thus, there was no reason for Richardson's attorney to object to this statement.

The Court went on to tell the jury that if they did have questions, they should never indicate to the Court how they stood in terms of voting because that would result in a mistrial. The Court indicated that a mistrial would be a "[v]ery bad thing" in an effort to keep the jurors from telling the Court how they stood before they had a unanimous verdict. The Court discussed the burden of a retrial only to impress upon the jury the importance of not telling the Court how they stood until they had a unanimous verdict. Further, the Fourth Circuit upheld the same language in jury instructions given by the Court in another case, *Tillery*, 702 F.3d at 175-76, and did not find error in this case when reviewing the entire record on appeal. *Richardson*, No. 09-5015. The jury instructions therefore were not in error and Richardson's counsel was not deficient in choosing not to object to the Court's instructions. Ground 12 is therefore DENIED.

### l. Ground 13

Ground 13 fails because Richardson cannot show his attorney was deficient in choosing not to object to the Court's jury instruction that the Government did not need to prove Richardson knew the substance involved was heroin, only that Richardson knew the substance was a controlled substance.[17] Richardson argues that because the Indictment against him charged distribution of heroin, the Government must prove the substance involved was actually heroin and that he knew it was heroin. The Fourth Circuit has previously considered this exact argument and rejected it. *United States v. Brower*, 336 F.3d 274, 276-77 (4th Cir. 2003) ("Simply stated, the defendant's knowledge with regard to the exact nature, or for that matter the exact amount, of a controlled substance is not a fact that increases the penalty under § 841(b). The holding in *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)], therefore, does not require the Government to prove that [Defendant] knew that he was distributing a substance containing cocaine base and, accordingly, the district court did not err by instructing the jury that the Government needed only to prove that [Defendant] knew that he was distributing a controlled substance."). The jury instruction in this case complies with the controlling law in this circuit and Richardson's attorney did not perform deficiently in not objecting to the Court's instruction. Ground 13 is therefore DENIED.

### m. Ground 14

Ground 14 fails because Richardson cannot show his attorney performed deficiently in not challenging the Indictment for failing to specifically allege that Richardson's drug-related activities affected commerce and that Richardson had knowledge of such an effect. The

---

[17] The full instruction states:

> It is not necessary for the United States to prove that the defendant knew the substance involved was heroin. The government must prove beyond a reasonable doubt that the defendant did know that some type of controlled substance was distributed or possessed with the intent to distribute. You are instructed as a matter of law that heroin is a Schedule I controlled substance.

Trial Tr. 255.

Indictment charged Richardson under 21 U.S.C. § 841(a)(1), which criminalizes knowingly or intentionally manufacturing, distributing, or dispensing a controlled substance. Section 841 is part of the Controlled Substance Act (CSA), 84 Stat. 1242, 21 U.S.C. § 801 *et seq.*, and was declared to be a constitutional exercise of Congress's power under the Commerce Clause by the Supreme Court. *Gonzales v. Raich*, 545 U.S. 1, 9 (2005). The Supreme Court found that the activities regulated by the CSA are "quintessentially economic." *Id.* at 25. Interpreting § 841(a), the Fourth Circuit has recognized that the elements of possession with intent to distribute (Count One of the Indictment) are "(1) possession of [a] narcotic controlled substance, (2) knowledge of the possession, and (3) intent to distribute the narcotic controlled substance. *United States v. Randall*, 171 F.3d 195, 209 (4th Cir. 1999). The elements of distribution (Count Two of the Indictment) are "(1) distribution of [a] narcotic controlled substance, (2) knowledge of the distribution, and (3) intent to distribute the narcotic controlled substance." *Id.* Thus, under Fourth Circuit law, it is not necessary for the Government to allege conduct affecting commerce or knowledge of such an effect and Richardson's attorney was not deficient in not challenging the Indictment against Richardson. Ground 14 is therefore DENIED.

### n. Ground 15

Ground 15 fails because Richardson cannot show he was prejudiced by his counsel's decision not to challenge Richardson's prior state court convictions, which served to enhance his federal sentence. Richardson's argument that his attorney was ineffective in failing to argue his state convictions were misdemeanor convictions rather than felony convictions is belied by the Presentence Investigation Report ("PSR"), which clearly shows that Richardson had three prior felony convictions for possession or distribution of cocaine, which occurred on three separate occasions. PSR ¶¶ 41, 45, 47. Richardson's argument that his attorney should have challenged his underlying convictions as unconstitutionally obtained because his state counsel was ineffective also fails because such an argument is not cognizable at sentencing, *Custis v. United States*, 511 U.S. 485, 490-97 (1994), or on collateral review of his federal sentence, *Daniels v.*

*United States*, 532 U.S. 374, 378-79 (2001). Only a *Gideon*-type attack on the constitutionality of the prior state convictions, where the state court failed to appoint counsel to an indigent defendant, is cognizable when challenging enhancement of a federal sentence. *Daniels*, 532 U.S. at 378 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). Finally, Richardson's argument that the jury should have determined whether his prior state convictions were felony or misdemeanor convictions under *Apprendi* fails because *Apprendi* does not apply to prior convictions. *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); *see also Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Even if, therefore, counsel had challenged Richardson's prior state convictions, the outcome would not have changed and Richardson cannot show prejudice. Ground 15 is therefore DENIED.

### o. Ground 16

Ground 16 must be denied because Richardson's argument cannot succeed despite the recent Supreme Court decision in *Alleyne v. United States*, No. 11-9335, 2013 WL 2922116 (U.S. June 17, 2013). Richardson contends that the Court erred at sentencing in making findings of fact by a preponderance of the evidence that increased his sentence. Richardson presumably refers to the Court's findings on the drug weights attributed to Richardson's crimes, which would set the mandatory minimum sentence pursuant to 18 U.S.C. § 841. Richardson recognized this claim failed unless the Supreme Court overruled its decisions in *Harris v. United States*, 536 U.S. 545 (2002) and *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which held that facts increasing a mandatory minimum sentence could be decided by a judge at sentencing rather than a jury. Recently, the Supreme Court overruled *Harris*, holding that facts that increase the mandatory minimum sentence are "elements and must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 2013 WL 2922116, at *7. Richardson's claim, however, is not made cognizable under *Alleyne* because his mandatory minimum was based on his status as

an armed career criminal under 18 U.S.C. § 924(e) as a result of prior convictions, rather than any drug weights found by the Court. *See* PSR Worksheet D. As noted above, the rule set out in *Apprendi,* and extended in *Alleyne*, does not apply to prior convictions. *See Apprendi*, 530 U.S. at 490. Accordingly, the Court's finding regarding drug weights did not affect Richardson's mandatory minimum and his case is therefore unaffected by *Alleyne*. Richardson's claim accordingly has no merit and Ground 16 is DENIED.

### p. Ground 17

Ground 17 fails because Richardson cannot show he was prejudiced by the fact his attorney did not argue a 288 month sentence violated the Eighth Amendment. Any argument that Richardson's sentence violated the Eighth Amendment would fail because he was sentenced to 288 months, the middle of the advisory guideline range. In reviewing Richardson's sentence, the Fourth Circuit noted that a within-guideline sentence is presumptively reasonable. *United States v. Richardson*, No. 09-5015 (4th Cir. Aug. 4, 2011) (citing *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007)). The Fourth Circuit went on to review the entire record of Richardson's case, including his sentence, and found "no meritorious issues for appeal." *Id.* Furthermore, the Fourth Circuit has held that "proportionality review [under the Eighth Amendment's cruel and unusual punishment clause] is not available for any sentence less than life imprisonment without the possibility of parole." *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009). Accordingly, any argument made by Richardson's attorney regarding the constitutionality of his sentence would not have changed the outcome. Because Richardson cannot show prejudice, Ground 17 is DENIED.

## II. REQUEST FOR EVIDENTIARY HEARING

As part of the conclusion to Richardson's § 2255 Motion, Richardson asks the Court to set aside his conviction "or to hold a hearing to resolve the issues." Generally, an evidentiary hearing is required under § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *United States v. Witherspoon,* 231 F.3d 923, 925–27 (4th Cir.

2000); *Raines v. United States,* 423 F.2d 526, 529–30 (4th Cir. 1970). The district court must hold an evidentiary hearing when the movant "presents a colorable . . . claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue." *Witherspoon*, 231 F.3d at 925–27. Whether an evidentiary hearing is necessary is within the discretion of the district court. *Raines,* 423 F.2d at 530. For the reasons stated more fully above, a review of the record in this case clearly demonstrates that Richardson is not entitled to relief under § 2255. Accordingly, the Court DENIES Richardson's request for an evidentiary hearing.

## III.    OTHER PLEADINGS

In addition to Richardson's § 2255 Motions and replies to the Government's response, Richardson filed a Notice to Strike the Government Entitled Memorandum (ECF No. 72), a Motion of Clarification (ECF No. 73), an Addendum (ECF No. 74), a Motion to Clarify the Mailing of the Defendant's Reply Brief (ECF No. 77), and a Supplement Motion in Support of Reply (ECF No. 78). These filings generally attempt to clarify any confusion that might have been caused in the mailing of multiple motions and extra information for the Court to consider. The Notice to Strike indicates that Richardson disregarded the Government's notice under *Roseboro v. Garrison*, 528 F.3d 309 (4th Cir. 1975), informing Richardson of his right to reply to the Government's response to his § 2255 Motions. Richardson indicated he disregarded the notice because he believed the Government did not have authority to inform him of the requirements regarding his reply. Richardson nevertheless replied in accordance with the Court's Orders. After reviewing each of Richardson's pleadings, the Court finds they do not change the above analysis of the § 2255 Motions. Further, because the Court considered all of Richardson's pleadings, including both § 2255 Motions and his reply, Richardson's Motion of Clarification (ECF No. 73) is DENIED as MOOT.

## IV.    CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Richardson is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## <u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Richardson's § 2255 Motions, DENIES as MOOT Richardson's Motion of Clarification, and DENIES a Certificate of Appealability.

Let the Clerk send a copy of this Memorandum Opinion to Mr. Richardson and all counsel of record.

An appropriate order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this ___2nd___ day of August 2013.